# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRADFORD MCARTHUR, | ) 1:07cv0805 DLB<br>)<br>) |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S<br>) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner<br>of Social Security, | )<br>)<br>) |
| Defendant. | )<br>) |

## BACKGROUND

Plaintiff Bradford McArthur ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed his application on August 6, 2003, alleging disability since July 8, 1991, due to severe back, shoulder and right knee problems. AR 69-74, 88-94. After an initial denial

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On July 24, 2007, the Honorable Oliver W. Wanger reassigned the case to the undersigned for all purposes.

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

and denial on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 37, 43, 46. On August 21, 2006, ALJ James Berry held a hearing. AR 266-284. ALJ Berry denied benefits on October 5, 2006. AR 18-28. The Appeals Council denied review on March 30, 2007. AR 5-8.

<u>Hearing Testimony</u>

ALJ Berry held a hearing in Bakersfield, California, on August 21, 2006. Plaintiff appeared with his representative, Victoria Snyder. Vocational expert ("VE") Kenneth Ferra also appeared and testified. AR 266.

Plaintiff testified that he last worked in 1983 as a millwright. AR 269-270. He collected Social Security benefits from 1995 to 1999, when he went to jail and his benefits were terminated. AR 270.

Plaintiff believes that he cannot work because of his left shoulder and lower back. He has an injury on a disc that pinches a nerve and loses control of his right leg. He also has a torn meniscus in his right knee and loses control of his bowels. AR 270. He is on medication for "voices, depression, anxiety." AR 271.

Plaintiff graduated from high school and would like to be able to work. AR 271.

When examined by the ALJ, Plaintiff testified that he went to jail in 1999 for possession for sale of methamphetamine. AR 272. At the time of the hearing, he was in a recovery home and did not support himself. AR 272.

Plaintiff explained that he has a pinched nerve between L3, 4 and 5, and a herniated disc, but has not had surgery. He has had the pinched nerve since 1982. Doctors suggested that he go without surgery if he could because the outcome of surgery was unknown. He stated that it "hasn't gotten bad enough to where surgery was needed," but testified that it causes him a lot of pain, a loss of feeling in his right leg, and loss of control of his bowels. AR 272-273. He is taking Salsalete for pain. AR 273.

Since 1988 or 1989, Plaintiff has had a torn meniscus in his right knee. He has not had surgery because he never scheduled it. AR 273. He has not had physical therapy for his knee, but has had therapy for his back. AR 273. He last had therapy in 1984, but now he just does the

1  "stuff that they taught me" and when he's in a lot of discomfort, he lays down on his back, lifts
2  his legs and twists his lower back.  After about eight days, he is able to walk normally again.  AR
3  274.
4       Plaintiff testified that he did not have a work assignment in prison and was never
5  assigned to a camp because he was unable to go to camp.  AR 274.  When asked about the
6  February 2000 clearance for work furlough in his records, Plaintiff testified that he did not
7  remember being cleared.  AR 274.
8       Plaintiff began treatment for depression and anxiety in 2004 or 2005.  AR 274.  He takes
9  medication and sees a counselor every two months, and lets them know everything "seems to be
10 stable."  AR 275.  He thought his medication was helpful and that his mind functions "pretty
11 well."  He does not know of any side effects.  AR 277.
12      Plaintiff was last incarcerated in 2004 for possession for sale of methamphetamine and
13 was released in 2005.  AR 275.  He testified that he last used non-prescription drugs in December
14 2004.  AR 276.  He doesn't work at his resident home, but usually takes the trash out of the
15 office.  AR 276.
16      During a typical day, he reads, studies and visits with other guys in the program.  On
17 weekends, he visits his sister.  AR 277.  He thought he could lift no more than 15 to 25 pounds,
18 and could carry a couple of gallons of milk about 100 feet.  AR 278.  He could stand for about 30
19 minutes before getting uncomfortable and thought he could walk for an hour or two in an eight
20 hour day.  AR 278.  He could sit for an hour or two, but could continue sitting after he
21 readjusted.  AR 279.
22      Plaintiff also believed that his left shoulder injury prevents him from working.  He has no
23 mobility in his left shoulder because of a third degree left shoulder separation in 1988 and now
24 has arthritis.  AR 279.  He did not have therapy for his shoulder.  He also tore his biceps muscle
25 in 2004, and it burns when he over-exerts it.   AR 280.
26      For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, and
27 education, with no past relevant work experience.  This person could stand, walk and sit for six
28 hours each, and could lift and carry 50 pounds occasionally, 25 pounds frequently.  This person

could occasionally climb, balance, stoop, crouch, crawl and kneel.  This person could perform simple, repetitive tasks, maintain attention, concentration, persistence and pace, and relate to and interact with others.  This person can also adapt to usual changes in the work setting and adhere to safety rules.  The VE testified that this person could perform some assembly positions, cleaner positions and sorter positions.  AR 281-282.

For the second hypothetical, the ALJ asked the VE to assume that this person could stand for two hours, walk for one hour, sit for one to two hours, lift 15 to 25 pounds and carry approximately 16 pounds.  This individual has limited mobility in the right upper extremity and needs a cane for ambulation.  The VE testified that this person could not perform any work.  AR 283.

Medical Record

Plaintiff was seen by Nicholas Lind, M.D., on September 12, 2001.  He reported a history of hepatitis C and requested medication refills.  He was previously offered interferon and Ribavirin treatment, but refused.  On examination, he had no epigastric discomfort.  AR 143.  Blood testing performed on September 7, 2001, revealed an abnormal ALT level.  AR 148.

Plaintiff returned to Dr. Lind on March 6, 2002, and reported that he was feeling relatively well with the vitamins he was taking.  His recent blood work revealed an ALT within normal range.  He had minimal epigastric discomfort.  AR 143.  He was prescribed vitamins and Maalox.  AR 143.

Blood testing related to Plaintiff's liver function performed on September 6, 2002, and August 30, 2003, was within normal limits.  AR 139-142.

On September 29, 2003, Jagvinder Singh, M.D., performed a consultive examination. Plaintiff complained of hepatitis C, low back pain, and problems with his left shoulder and right knee.  Plaintiff was using a cane to walk due to low back pain.  He reported that he lives with his sister and has no trouble taking care of himself, driving, cooking, sweeping or dishwashing.  On examination, Plaintiff had no problems getting on and off the examination table and was able to take his shoes off.  His appearance, mood and gait were normal.  His abdomen was soft, nontender and nondistended, with no palpable masses.  There was no paravertebral spasm,

tension or tenderness in his back or neck, and his upper and lower limbs were normal. Straight leg raising was negative. Range of motion in his left shoulder was limited, but range of motion in all other joints was within normal limits. Motor strength was 5/5 in all muscle groups with no evidence of atrophy. AR 178-181.

Dr. Singh diagnosed Plaintiff with hepatitis C, left shoulder pain and decreased range of motion, history of low back pain, and history of right knee pain. AR 182. He thought that the left shoulder problem could be due to a rotator cuff injury. Although he has hepatitis C, there were no physical signs of liver disease. There were also no physical findings or limitations related to his low back and right knee pain, and Dr. Singh did not think the cane was necessary. He opined that Plaintiff could stand and walk for about six hours and sit without restriction. He could lift and carry 50 pounds occasionally and 25 pounds frequently. He would have problems reaching above shoulder level with his left arm and should avoid working at extremes of temperature and at heights. AR 182.

X-rays of Plaintiff's lumbar spine performed on September 29, 2003, revealed moderate degenerative disease at L5-S1. AR 183. Blood testing performed on the same day revealed abnormal ALT levels and abnormal bilirubin and protein levels. AR 184.

On October 28, 2003, a State Agency physician completed a Physical Residual Functional Capacity Assessment form. The physician opined that Plaintiff could lift and carry 50 pounds occasionally, 25 pounds frequently, stand and/or walk about six hours in an eight hour day, and sit for about six hours in an eight hour day. He could occasionally climb, balance, stoop, kneel, crouch and crawl. AR 186-193.

Plaintiff saw Michael S. Barnett, M.D., on February 20, 2004, for a consultive psychiatric evaluation. Plaintiff complained that since getting out of prison six or eight months ago, he feels like people watch him or talk about him. He denied psychotic symptoms and did not have auditory hallucinations, paranoia or a feeling that an evil force is out to get him. His energy was low and his concentration varied depending on his sleep. On mental status examination, Dr. Barnett described Plaintiff as "a slow, white male who appeared to be answering questions positively" and "very concerned about getting his SSD back." He was in no acute psychic

distress, and his responses were vague, coherent and organized. His mood was depressed and his affect was euthymic. He was oriented times three, but was unable to perform serial threes. His recent memory was intact. Dr. Barnett diagnosed depressive disorder, not otherwise specified, and personality disorder, not otherwise specified, with antisocial and dependent traits. His current GAF was 59. AR 194-195.

Dr. Barnett explained that Plaintiff's long-term history of substance abuse led to the development of an antisocial and dependent personality disorder and inhibited his maturation. There may be an underlying mild depression relating to his current release from prison. Given his limited education and criminal history, employment opportunities would be limited. He did not believe, though, that his depressive symptoms would interfere with his ability to work. He would be able to understand and remember simple work-related instructions, sustain focused attention and concentration long enough to complete routine work-related tasks in a timely and appropriate way, and would not need special or additional supervision to do so. He could interact independently, appropriately and effectively with coworkers, supervisors and the public. He may have difficulty, however, adapting to changes, hazards or stressors in the work environment given his slight paranoia about people and circumstances. His prognosis was guarded to poor. AR 196.

On April 16, 2004, State Agency physician Melvin Morgan, M.D., completed a Psychiatric Review Technique form. In rating his functional limitations, Dr. Morgan opined that Plaintiff had mild restrictions in activities of daily living and mild difficulties in maintaining social functioning. He had moderate difficulties in maintaining concentration, persistence and pace. Despite this, Plaintiff could perform simple, repetitive tasks. AR 198-211.

In a Mental Residual Functional Capacity Assessment form completed the same day, Dr. Morgan opined that Plaintiff was markedly limited in his ability to understand, remember and carry out detailed instructions, moderately limited in his ability to carry out very short and simple instructions, and moderately limited in his ability to maintain attention and concentration for extended periods. He was also moderately limited in his ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances. He was also

1  moderately limited in his ability to respond appropriately to changes in the work setting and in
2  his ability to be aware of normal hazards and take appropriate precautions.  However, Plaintiff
3  was capable of simple, repetitive tasks.  AR 212-214.
4        Plaintiff returned to Dr. Carey on May 20, 2004, in follow-up for anxiety.  His
5  medications were refilled.  AR 218.  From October 23, 2003, Plaintiff was prescribed numerous
6  medications, including Vicodin, Soma and Xanax.  AR 218-222.
7        On November 28, 2004, Plaintiff went to Kern Medical Center seeking medical
8  clearance.  He complained of chronic low back pain.  He received medical clearance and was
9  returned to jail.  AR 259-263.
10        On December 29, 2004, Plaintiff reported to Kern Medical Center after his right arm was
11  twisted behind his back during an arrest.  He was diagnosed with a right biceps rupture.  AR 248-
12  249.  He was given medical clearance and returned to jail.  AR 250.  X-rays of his right elbow
13  taken that day revealed a slight deformity of the lateral aspect of the head of the radius, probably
14  old.  AR 258.
15        Plaintiff went to Kern Medical Center on February 22, 2005, seeking medication refills
16  and again complaining of right arm pain.  He also reported that an old left shoulder injury was
17  aggravated during the arrest.  Upon examination, he had crepitus in his left shoulder and
18  decreased range of motion.  AR 245.  He was diagnosed with a right biceps tendon rupture and
19  left shoulder pain.  AR 245.  The doctor indicated that he would seek authorization to surgically
20  repair his biceps.  AR 245.  The surgery authorization request indicates that the repair was an
21  elective procedure for right arm pain and weakness. AR 246.
22        A left shoulder x-ray taken on February 22, 2005, revealed partial ossification of the left
23  coracoclavicular ligament, early degenerative changes of the left glenohumeral joint with bony
24  spur at the inferior portion of the left humerus, but no recent fracture of the left shoulder.  AR
25  244.
26        Between January and February 2006, Plaintiff received counseling and medication
27  management for depression from the Department of Corrections.  AR 225-227.  On January 4,
28  2006, he reported that he was doing well with his current medications.

On January 20, 2006, Plaintiff complained of pain and burning in his right arm and right leg. AR 228.

On February 2, 2006, Plaintiff had a very positive attitude about his upcoming release, even though he was also anxious and nervous. He was stable and capable of coping with the situation. AR 227.

On April 6, 2006, Plaintiff went to Kern Medical Center for medication refills (Dilantin, B-complex, Vicodin and Soma). He also complained of mild aching in his low back and right shoulder. He had normal range of motion in his extremities and back, normal gait and negative straight leg raising. Strength and tone were normal and he had no effusion or tenderness in his joints. Plaintiff reported that his last seizure was one year ago. He was diagnosed with chronic low back pain, seizure disorder and hepatitis C. AR 232-241.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of hepatitis C, biceps tendon rupture, and depressive disorder. AR 23. Despite these impairments, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to lift and carry 50 pounds occasionally, 25 pounds frequently, stand and/or walk for six hours each, sit for six hours, and occasionally climb, balance, stoop, crouch, crawl and kneel. He could maintain attention, concentration, persistence and pace for simple, repetitive tasks, relate to and interact with others, adapt to usual changes in work settings and adhere to safety rules. AR 23. Based on this RFC and the testimony of the VE, the ALJ determined that Plaintiff could perform a significant amount of work in the national economy, including assembler, cleaner and sorter. AR 28.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" (hepatitis C, biceps tendon rupture, and depressive disorder) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of

---

[3] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

9

impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) has no past relevant work; but (5) retains the RFC to perform jobs that exist in significant numbers in the national economy. AR 23-27.

Plaintiff argues that the ALJ (1) improperly evaluated his mental impairments; and (2) improperly evaluated his RFC.

## **DISCUSSION**

A. <u>Plaintiff's Mental Impairments</u>

Plaintiff first argues that the ALJ improperly assessed his mental impairment. Specifically, he contends that the ALJ failed to consider the State Agency physician's findings that Plaintiff had moderate limitations in several areas.

RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or equivalent work schedule. SSR 96-8p. The RFC assessment must be based on all of the relevant evidence in the record, including the effects of symptoms that are reasonably attributed to a medically determinable impairment. SSR 96-8p. In addition, the adjudicator "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe,'" because such limitations may be outcome determinative when considered in conjunction with limitations or restrictions resulting from other impairments. SSR 96-8p.

In his RFC finding, the ALJ determined that Plaintiff could maintain attention, concentration, persistence and pace for simple, repetitive tasks, relate to and interact with others, adapt to usual changes in work settings and adhere to safety rules. AR 23. Plaintiff believes that the State Agency physician's findings contradict this RFC and should have been considered by the ALJ. He points to Dr. Morgan's findings set forth in the Mental Residual Functional Capacity Assessment, where he opined, in part, that Plaintiff was moderately limited in his ability to (1) carry out very short and simple instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular

attendance and be punctual within customary tolerances; (4) respond appropriately to changes in the work setting; (5) be aware of normal hazards and take appropriate precautions.[4]

As explained above, the ALJ conducts a five-step sequential inquiry in determining whether a claimant is disabled. *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996). At step two, the ALJ determined that Plaintiff's depressive disorder was a severe impairment. At step three, he determined that it was not "severe" enough to meet or medically equal any of the listed impairments. AR 23. In making the step two and three findings, the ALJ followed 20 C.F.R. § 404.1520a(c), which sets forth the method used to rate the degree of functional limitation related to mental impairments:

> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listing of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

20 C.F.R. § 404.1520a(c)(3)-(4).

After the ALJ rates the degree of functional limitations resulting from a claimant's impairments, the ALJ determines the severity of those mental impairments. 20 C.F.R. § 404.1520a(d). If a mental impairment is found to be severe, the ALJ will determine whether it meets, or is equivalent in severity to, a listed mental disorder. 20 C.F.R. § 404.1520(d)(2). If the ALJ determines that the claimant has a severe mental impairment that neither meets nor is equivalent in severity to any listing, the ALJ then moves on to determine the claimant's RFC. 20 C.F.R. 404.1520a(d)(3).

Here, the ALJ analyzed the degree of Plaintiff's functional limitations in activities of daily living, maintaining social functioning, maintaining concentration, persistence or pace, and

---

[4] Plaintiff states that Dr. Morgan also found him to be moderately limited in his ability to set realistic goals or make plans independently of others. However, according to the Mental Residual Functional Capacity Assessment, Plaintiff was not significantly limited in this area. AR 213.

11

episodes of decompensation as part of his step two and three findings. Specifically, he found that Plaintiff's depression caused a mild limitation in his ability to engage in daily activities and maintain social functioning, and a moderate limitation in his ability maintain concentration, persistence or pace. He had no episodes of decompensation. AR 23. Having determined that Plaintiff's mental impairments were severe, but that they did not meet or equal a listed impairment so as to be presumptively disabling, the ALJ determined Plaintiff's RFC. Unlike the analysis at steps two and three, where the ALJ examines the degree of limitation, RFC is the most a claimant can do, "*despite* [his] limitations." 20 C.F.R. § 404.1545(a) (emphasis added).

Similarly, Dr. Morgan's findings of moderate limitations in the areas noted above are part of the RFC finding and assist in formulating Plaintiff's abilities despite his limitations and impairments. Although Plaintiff cites to his moderate limitations, he fails to recognize that Dr. Morgan, as well as Dr. Barnett, found that he retained the RFC to perform simple, repetitive tasks despite his limitations. AR 196, 214.

Contrary to Plaintiff's assumption, moderate limitations at steps two and three do not necessarily translate into a disabling RFC. The Ninth Circuit recently explained that the "step two and step five determinations require different levels of severity of limitations such that the satisfaction of the requirements at step two does not automatically lead to the conclusion that the claimant has satisfied the requirements at step five." *Hoopai v. Astrue*, 499 F.3d 1071 (9th Cir. 2007) (a step-two finding that a non-exertional impairment is severe does not require that the ALJ seek the assistance of a vocational expert at step five). As the analysis for steps two and three is different than that at five, Plaintiff's claim that the findings are inconsistent is not supportable

In support of his argument, Plaintiff cites SSR 96-5p, which discusses the treatment of medical source opinions on issues reserved to the Commissioner. It states, in part, "[a]djudicators must weigh medical source statements under the rules set out in 20 CFR 404.1527 and 416.927, providing appropriate explanations for accepting or rejecting such opinions." While this is indeed true, it does not support a finding that the ALJ somehow erred in failing to include Plaintiff's moderate limitations in the RFC finding. Again, Plaintiff's moderate

1  limitations did not provide the ALJ with information as to what Plaintiff *could* do, despite his
2  impairments.
3      Plaintiff's argument is without merit and must be denied.
4  B.    <u>Plaintiff's Physical RFC</u>
5      In a similar argument, Plaintiff contends that the ALJ erred by relying on medical records
6  that preceded his December 2004 right biceps tear. He points to the ALJ's reliance on the State
7  Agency physician's October 2003, assessment, and the consultive examiner's September 2003,
8  examination.
9      First and foremost, as Defendant points out, Plaintiff fails to cite *any* limitations relating
10  to his right biceps tear. *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (mere existence of
11  impairment is insufficient proof of disability). Indeed, there are no indications in the record that
12  he suffered from any resulting limitations.
13      Plaintiff first sought treatment for his right arm in December 2004, and was instructed to
14  rest, and use ice and elevation. He received medical clearance and the jail was directed to give
15  him Vicodin for pain. AR 257. Plaintiff returned in February 2005, seeking medication refills
16  and complaining of right arm pain. AR 245. Although an elective surgery authorization request
17  was completed, there is no indication in the record as to the status of the request, nor is there any
18  evidence that Plaintiff actually underwent any surgery. Almost one year passed until Plaintiff
19  again sought treatment for his right arm. On January 20, 2006, Plaintiff complained of pain and
20  burning in his right arm and right leg. AR 228. No limitations were imposed. On April 6, 2006,
21  the last treatment note in the record, Plaintiff complained of pain in his low back and right
22  shoulder. He had normal range of motion in his extremities and back, normal gait and negative
23  straight leg raising. Strength and tone were normal and he had no effusion or tenderness in his
24  joints. AR 232-241. Again, no limitations were imposed and he was instructed to take his
25  medications and return if he became worse. AR 237.
26      Given the record, then, it is unlikely that Plaintiff *could* point to any limitations because
27  none seemed to exist. In fact, Plaintiff testified at his August 2006 hearing only that his right
28  arm burns when he over-exerts it. AR 280. He suggests that because the ALJ found his biceps

tear to be a severe impairment, it was unreasonable to rely on the 2003 opinions. However, the fact that an impairment is severe does not necessarily mean that there will be resulting limitations. In any event, the ALJ's reliance on 2003 opinions unreasonable given the medical record, described above.

Plaintiff's claim is without merit and must be denied.

### CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Bradford McArthur.

IT IS SO ORDERED.

Dated:   **March 24, 2008**               **/s/ Dennis L. Beck**
                                   UNITED STATES MAGISTRATE JUDGE